DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Christopher M. Mason, appeals a conviction from a jury verdict entered in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On the morning of January 6, 2002, Mason, accompanied by two friends and closely followed by his brother, went to a local gas station. While at the gas station, Mason observed Willie Benton and Terrell Cook near the station. Mason exited the gas station, pulled a gun, and shot Benton four times. Mason was indicted and tried; at trial he raised the affirmative defense of self-defense. The jury convicted Mason of felonious assault with a firearm specification, a felony of the second degree, having a weapon while under a disability with a firearm specification, a felony of the third degree, and carrying a concealed weapon, a felony of the fourth degree. Mason timely appealed, raising one assignment of error.
 II.
"THE JURY'S VERDICT OF GUILTY ON THE CHARGE OF FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THERE IS OVERWHELMING EVIDENCE THAT THE DEFENDANT ACTED IN SELF DEFENSE."
 {¶ 3} In his sole assignment of error, Mason argues that, although he shot Willie Benton, the assault was justified by the affirmative defense of self-defense. Mason states proof was "overwhelming" as to the elements of self-defense, and therefore the jury was misled or disregarded the jury instructions. We disagree.
"The burden of going forward with the evidence of an firmative defense, and the burden of proof, by a eponderance of the evidence, for an affirmative defense, is on the accused." R.C. 2901.05(A).
"As used in this section, an `affirmative defense' is * * *:
"(1) A defense expressly designated as affirmative;
"(2) A defense involving an excuse or justification peculiarly thin the knowledge of the accused, on which he can fairly be quired to adduce supporting evidence." R.C. 2901.05(C).
 {¶ 4} Self defense is an affirmative defense. State v. Martin
986), 21 Ohio St.3d 91, 93. In order to prove self defense, Mason must demonstrate that: (1) he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was in the use of force; and (3) that he did not violate any duty to retreat or avoid the danger. State v. Jackson (1986),22 Ohio St.3d 281, 283. The elements of self-defense are cumulative. Id. at 284. If Mason failed to prove any one of these elements by a preponderance of the evidence, then he failed to demonstrate that he acted in self-defense. State v. Hill (Mar. 17, 1992), 10th Dist. No 91AP-792.
 {¶ 5} In reviewing whether a conviction is against the manifest weight of the evidence, this court must:
"review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 6} When an appellate court overturns a jury verdict on manifest weight of the evidence grounds, it is, in effect, acting as a "thirteenth juror" and is setting aside the resolution of evidence and testimony as found by the trier of fact. State v. Thompkins (1997) 78 Ohio St.3d 380,397. Accordingly, only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Otten, 33 Ohio App.3d at 340.
 {¶ 7} All eye-witnesses who testified, including Mason, agreed that four shots were fired and all were fired by Mason. The police found four .25 caliber casings at the scene.
 {¶ 8} At the trial, Benton testified that he had no weapon when Mason confronted him. He further stated that he did not know why Mason shot at him, and he did not threaten Mason in any way prior to the shooting. When asked if he ever wore a bullet-proof vest, ever owned a 9 mm. weapon, or ever shot at Mason's house, Benton replied in the negative. A policeman likewise testified that there was no record of any 911 calls made to the Akron Police Department by Mason accusing Benton of any criminal behavior targeting Mason.
 {¶ 9} A neighbor, who drove Benton to the hospital after the shooting, testified that he observed no weapon on Benton and did not find one in his car after the transport. The police corroborated that they found no weapon on Benton, nor did they find one that Benton may have dropped while fleeing or while in the neighbor's vehicle.
 {¶ 10} Christian Rubio, one of Mason's friends who escorted him to the gas station on the day of the shooting, testified that, whereas he observed Cook put his hand inside his coat, he did not see either Cook or Benton produce a gun. Rubio further testified that only Mason fired a weapon. Nonetheless, Rubio testified that he felt Mason had no choice but to shoot at Benton.
 {¶ 11} One police officer testified that several months after the shooting, they responded to a call at Mason's house when Mason claimed that someone had fired shots at his house. The police officer testified that he retrieved 9 mm casings from the scene. The police officer further stated that, at the time, Mason did not name a suspect, claiming only that the shooter was a black male. Another police officer testified that he interviewed Mason several months later regarding an unrelated incident, when Mason confessed to shooting Benton, saying that he went "directly at him[.]" The officer had tape-recorded the conversation with Mason and the court permitted the jury to hear the tape.
 {¶ 12} To establish his defense, Mason called three witnesses. The first was Jammie Hamilton, who stated that she heard four shots while she was in her home behind the gas station. She further stated that she did not see anyone shoot. She testified that she looked out the window and observed Benton and Cook running away from the scene in a direction that took them away from her house, and that Benton dropped a gun while he was running. She claimed she observed Cook pick up the gun. She stated that she knew it was a real gun because Benton had shown it to her about a month prior to the shooting; however, when initially interviewed, she did not tell the police that she had seen the gun before. Further, Hamilton testified that she knew Benton frequently wore a bullet proof vest.
 {¶ 13} The second defense witness was an Akron employee who maintained the computers in the police and fire departments. The witness examined a 15 page computer report that listed 911 calls for assaults, simple assaults, and homicides in Akron districts 8 and 18. The witness testified that the report showed ten 911 calls for homicides. The witness did not testify as to the dates covered by the report, how many of the 911 calls were later proved to be an actual assault, simple assault, or homicide, or the relevance of the report to the case sub judice.
 {¶ 14} Finally, Mason, testifying on his own behalf, claimed that Benton had expressed anger at Mason because Benton could not find some drugs that he had left at Mason's house. Mason claimed that Benton threatened him several times, and Benton indicated that Mason would need either to shoot or be shot. Mason alleged that Benton was usually accompanied by several friends, whose presence was intended to intimidate. Mason testified that on January 5, the day before the shooting, a friend of Mason's claimed that Benton had shot at the friend. Further, Mason claimed that Benton telephoned his house on the morning of January 6 and threatened to shoot him. Mason further stated that he knew of incidents where Benton shot other houses of people with whom Benton was angry.
 {¶ 15} Mason testified that, on January 6, 2002, he left his house with two friends and his brother to go to the gas station. Mason stated that, while in the parking lot at the gas station, he observed Benton and Cook standing a block away. Mason claimed that he and his two friends went inside the station and bought some tobacco products. When he left the gas station again, Mason testified that he saw Benton and Cook in the parking lot of the gas station, and he observed both Benton and Cook take guns out of their clothing and point them at Mason. Mason testified that at that point he pulled his gun and fired four shots at Benton. Mason stated that he felt he had nowhere to run to get away from Benton and Cook. Mason conceded that neither Benton nor Cook fired a weapon.
 {¶ 16} Mason testified that he did not call the police any time that Benton threatened him, nor did he ask the attendant at the gas station to summon assistance when he saw Benton approaching the station. Mason claimed that it was a futile gesture to involve the police because he felt the police are unresponsive to problems in his neighborhood.
 {¶ 17} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam
(Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Mason's testimony that Benton and Cook pointed guns at him, that Mason had nowhere to run, and that Mason needed to shoot in self-defense is uncorroborated by the other testimony. It is evident that the jury heard the testimony, weighed the evidence, and rejected Mason's contention that he, by a preponderance of the evidence, met his burden to prove the elements of self-defense. There was substantial evidence to support the jury's conclusion that Mason did not act in self-defense and that conclusion, therefore, is not against the manifest weight of the evidence.
 {¶ 18} As for Mason's claim that the jury might have been "misled", the record shows that Mason did not object to the jury instructions. It is a fundamental principle of appellate review that a court will not consider an error that an appellant was aware of, yet failed to bring to the attention of the trial court. See State v. Awan
(1986), 22 Ohio St.3d 120, 122. Mason's assignment of error is overruled.
 III. {¶ 19} Mason's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Slaby, P.J., and Carr, J. Concur.