DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Daryl Inman, appeals from the judgment of the Medina County Court of Common Pleas which convicted him of felonious assault. We affirm.
 {¶ 2} On April 2, 2003, the Medina County Grand Jury charged Defendant with one count of felonious assault, in violation of R.C. 2903.11(A)(1). A jury trial was held. Defendant was found guilty and received a four year prison sentence. Defendant timely appealed and asserts one assignment of error for review.
 ASSIGNMENT OF ERROR
"The evidence at trial was insufficient to support [Defendant's] felonious assault conviction, and that conviction was against the manifest weight of the evidence, where [Defendant] was acting in self-defense and did not knowingly injure the alleged victim."
 {¶ 3} In his sole assignment of error, Defendant asserts that his conviction for felonious assault must be overturned as it was against the manifest weight of the evidence. Specifically, Defendant maintains that he established the affirmative defense of self-defense and that he did not knowingly cause injury to the victim as he was voluntarily intoxicated. Defendant's assignment of error lacks merit.
 {¶ 4} As a preliminary matter, we note that sufficiency of the evidence produced by the State and the weight of the evidence adduced at trial are legally distinct issues. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When reviewing a claim that a defendant established the elements of self-defense, the manifest weight standard is the proper standard of review as a defendant claiming self-defense does not intend to negate an element of the offense charged but rather seeks to relieve himself from culpability. Cleveland v.Williams, 8th Dist. No. 81369, 2003-Ohio-31, at ¶ 10, citing State v. Martin (1986), 21 Ohio St.3d 91, 94.
 {¶ 5} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id
 {¶ 6} In the present matter, Defendant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1). In order to be convicted of felonious assault, the State must demonstrate that Defendant knowingly caused serious physical harm to another. See id. One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 7} When determining whether a defendant acted "knowingly," his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. State v. Dorsey
(Feb. 13, 1991), 9th Dist. No. 90CA004796, at 3. Pursuant to R.C.2901.21(C), "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." Consequently, Defendant's assertion of voluntary intoxication as a defense is not applicable in the present case. See State v. Rice, 9th Dist. No. 02CA0002-M, 2002-Ohio-5266, at ¶ 21, citing State v. Rupp, 12th Dist. No. CA2001-06-135, 2002-Ohio-1600, at ¶ 31.
 {¶ 8} Additionally, Defendant argues that his conduct was justified as he was acting out of self-defense. As self-defense is an affirmative defense, a defendant bears the burden of establishing this defense by a preponderance of the evidence.Martin, 21 Ohio St.3d at 93; R.C. 2901.05(A). A defendant must demonstrate that:
"(1) he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was in the use of force; and (3) that he did not violate any duty to retreat or avoid the danger." State v.Mason, 9th Dist. No. 21397, 2003-Ohio-5785, at ¶ 4, citingState v. Jackson (1986), 22 Ohio St.3d 281, 283.
 {¶ 9} Ohio courts have recognized that "self-defense justification is placed on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties." (Emphasis omitted.) State v. Sheets (1926),115 Ohio St. 308, 310. See, also, State v. Thomas (1997),77 Ohio St.3d 323, 330, 1997-Ohio-269. When determining if the second element of self-defense has been proven by a preponderance of the evidence, the jury must consider all the circumstances to see whether the defendant had an objective reasonable belief of imminent danger and if he possessed a subjective honest belief that he was in danger of imminent harm. Thomas,77 Ohio St.3d at 330-31. Thus, a defendant asserting self-defense may introduce evidence of the victim's prior violent conduct in order to establish his state of mind at the time of the incident. Statev. Evans, 8th Dist. No. 79895, 2002-Ohio-2610, at ¶ 26, citingState v. Baker (1993), 88 Ohio App.3d 204, 208.
 {¶ 10} We note that the elements of self-dense are cumulative. Mason at ¶ 4, citing Jackson,22 Ohio St.3d at 284. Consequently, if Defendant failed to prove any of the elements by a preponderance of the evidence, he failed to demonstrate that he was acting in self-defense. See Mason at ¶ 4, citing State v. Hill (Mar. 17, 1992), 10th Dist. No. 91AP-792.
 {¶ 11} At trial, Defendant's wife, Kerina Inman ("Inman"), testified as to the events leading up to the felonious assault charges. Inman explained that on the March 24, 2003, Defendant arrived home from an evening of drinking and began fixing himself something to eat. The two children were asleep in bed. They began a discussion which soon turned into an argument. Inman stated that she became angry and threw Defendant's sandwich and drink away. Defendant walked into the living room area and Inman followed. She accused him of having an affair and began pushing Defendant so that he would listen, rather than retire to the bedroom for the night. Inman then "grabbed [Defendant] in the groin" several times with enough force that his undergarments were torn. She also recalled throwing a glass in Defendant's direction. Around 12:30 a.m. Inman left because she wanted to "cool off[.]" She stated that throughout the argument, Defendant had requested her to "keep [her] hands off of him" and had not used force against her at this point.
 {¶ 12} Later that evening, Inman returned home and the argument resumed. As Inman was attempting to push Defendant out of the door, he pushed her back and again asked that she "please keep [her] hands off of him." Inman explained that she then tried to "mentally hurt him" by going into their bedroom and breaking the frame to their marriage license. While Inman was attempting to set fire to the license, Defendant entered the bedroom, grabbed her arm, and asked what she was doing. Inman stated that she turned around and bit Defendant's arm and pulled his hair. Defendant then pushed Inman onto the bed and told her to "get a grip on [her]self." Inman explained that she was "very irrational" and was "screaming, and yelling and kicking [Defendant] and flaying [her] arms at him." She recalled putting her hands around his neck and digging her nails into him; Defendant was seated on Inman's chest. Inman testified that Defendant then struck her on the right side of the face. She felt a large amount of blood and decided to drive to the emergency room because she did not want her children to see her condition. Inman explained that she was unable to see where she was going because she could not open her right eye. She turned into the Seville Pantry and called 9-1-1 for help. Inman asserted that she also called her sister to go pick up the children so that they would not be taken away. The police arrived and Inman was transported to the Wadsworth-Rittman Hospital. Inman was treated for an orbital, nose and jaw fractures and referred to a plastic surgeon. Reconstructive surgery was performed on March 28, 2003. Inman did not return to work until April 25, 2003.
 {¶ 13} Additionally, Inman testified regarding a past altercation between herself and Defendant. A prior incident also resulted in charges being brought against Defendant. Inman explained that Defendant had returned home from a night of drinking and an argument ensued. Inman stated that she "pulled a knife on him" and Defendant was cut and needed stitches. Inman called 9-1-1. When the police arrived, Defendant was arrested. Inman recalled having both scratches and bruises on her face. The arresting officer, Ivan Reed, indicated that Inman had a cut and bump underneath her eye and a mark on her leg. Defendant had a cut on his finger. Defendant had represented to Officer Reed that he accidentally hit Inman in the eye with his elbow during the scuffle. He further stated that his hand was cut when he grabbed the knife.
 {¶ 14} Officer Jerry Coffee responded to the Seville Pantry on March 25, 2003, upon receiving a call from dispatch of a "hysterical" woman stating that she had been beaten by her husband. When Officer Coffee pulled into the parking lot, he observed Inman seated in her vehicle at the opposite end of the parking area. Officer Coffee recalled that he could see blood on Inman's face. He radioed for dispatch to send an EMT and then pulled beside her vehicle. Officer Coffee testified that the right side of Inman's face "was completely covered with blood" and her eye was very badly injured. Inman was "screaming [and] crying" and repeating that she "need[ed] to call [her] sister, [she] need[ed] to get [her] children out of the house, [she was] afraid [Defendant would] hurt them." When Officer Coffee asked Inman what had happened, she replied that her husband, Defendant, had punched her in the face.
 {¶ 15} After the EMTs arrived on the scene, Officer Coffee went to the Inman's residence, placed Defendant under arrest and read him his rights. Officer Coffee then asked him what had occurred. Defendant "stated [that] he and his wife were in an argument, and that she pulled his hair. In an attempt to get her off him, he might have accidentally hit her in the face with his elbow." Defendant suggested that he wanted to have charges brought against Inman. Officer Coffee then went to check on the children. As he walked by the Inman's bedroom, Officer Coffee observed a large amount of blood on the bed. Thereafter, Defendant was charged with felonious assault and transported to the police station. Officer Coffee explained that his decision to charge Defendant as the primary aggressor was motivated by the seriousness of Inman's injuries. He noted that Defendant only had a small scratch on his right hand and neck.
 {¶ 16} Additionally, Dr. Francis Papay, head of the cranial, facial and plastic surgery unit of the Cleveland Clinic, testified at trial. Dr. Papay performed Inman's reconstructive surgery. He explained that Inman suffered from multiple fractures on the right side of her face, including an orbital fracture. Dr. Papay indicated that surgery was recommended in order to reduce the fractures and to decrease the deformity and possibility of dysfunction. He stated that Inman's "right eye was placed in a little bit" and was "pretty much swollen" shut. She was experiencing a great deal of pain along with numbness and blood in the sinus cavity. Dr. Papay expressed his opinion that Inman's injuries were "more severe than usual" and caused by a more forceful exertion upon the face than a mere tap or slap. He asserted that the injuries were consistent with Inman's explanation that she had been punched in the face.
 {¶ 17} Clearly, the jury, in weighing the evidence, the credibility of the witnesses and testimony elicited at trial, could have concluded that Defendant was guilty of the various charges. Moreover, a determination as to what occurred is a question for the trier of fact, and it is not the function of the appellate court to substitute its judgment for that of the factfinder. See State v. Jenks (1991), 61 Ohio St.3d 259, 273. It is evident that the jury heard the testimony, weighed the evidence, and rejected Defendant's contention that he proved the elements of self-defense by a preponderance of the evidence. There was substantial evidence to support the jury's conclusion that Defendant did not act in self-defense. Defendant failed to produce any evidence that he believed he was in danger of death or great bodily harm. Rather, Inman testified that Defendant was trying to control her "and make [her] realize that [she] need[ed] to stop what [she] [was] doing." Moreover, Defendant also failed to present any evidence that such a belief would have been reasonable under the circumstances. Thus, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Defendant of felonious assault. Defendant's conviction is not against the manifest weight of the evidence. Accordingly, Defendant's sole assignment of error is overruled.
 {¶ 18} Defendant's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Whitmore, P.J., Baird, J. concur.