[Cite as *State v. Miller*, 2019-Ohio-92.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 18CA3 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| LALONI J. MILLER, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 01/08/19** |

_____
APPEARANCES:

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for Appellant.

Benjamin E. Fickel, Hocking County Prosecutor, Logan, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Appellant, Laloni Miller, appeals her convictions for felonious assault and assault, which were entered by the Hocking County Court of Common Pleas after a jury of her peers found her guilty of those offenses. On appeal, Appellant contends that 1) the jury's finding that she assaulted Kenneth Wells in any manner is against the manifest weight of the evidence; 2) the State presented insufficient evidence that Kenneth Wells suffered "serious physical harm," and that Appellant caused that serious physical harm; and 3) the trial court erred by overruling her Crim.R. 29 motion for judgment of acquittal.

{¶2} Because we conclude Appellant's convictions are supported by sufficient evidence and were not against the manifest weight of the evidence, we find no merit to her first and second assignments of error and they are both overruled. Further, because we find the State was not barred from prosecuting Appellant based upon a theory of non-mutual defensive collateral estoppel, her third assignment of error is also overruled. Accordingly, having found no merit in any of the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

FACTS

{¶3} Appellant was indicted on April 18, 2017 for two counts of felonious assault, both second degree felony violations of R.C. 2903.11. The first count alleged Appellant caused serious physical harm to the victim, Kenneth Wells. The second count alleged Appellant caused or attempted to cause physical harm to the same victim, by means of a deadly weapon, in particular, a rock. Appellant was ultimately convicted on count one and acquitted on count two. However, as to count two, the jury found Appellant guilty of a lesser-included offense of first-degree misdemeanor assault.

{¶4} The case brought against Appellant stemmed from an altercation that occurred between Appellant, her boyfriend and co-defendant, Raymond Reynolds, and the victim, Kenneth Wells, the couple's sixty-nine-year-old

neighbor.[1]  According to the testimony introduced at trial, Mr. Wells owned several dogs and had a habit of letting them go outside from time to time, without watching them and without ensuring they remained in his yard.  The testimony introduced at trial further reveals that Appellant and Reynolds had a history of disagreements regarding the dogs frequently being out in the road and interfering with traffic.

{¶5}  The parties agree that on the night in question, the victim's dogs were out in the road unattended, and Appellant and Reynolds had to stop their car on the road in front of the victim's house as a result.  The evidence indicates Reynolds began yelling for the victim to get his dogs out of the road, which prompted the victim to exit his house and go get the one dog that remained in the road at that time.  The testimony at trial differed as to what occurred next.  Both the victim and his wife, Lorrene Wells, testified that Reynolds sucker punched the victim in the left eye and on the right cheek, and that thereafter Appellant struck the victim on the right side of his forehead with a sixteen-pound rock from the Wells' flower garden.  Reynolds testified on behalf of Appellant at trial and denied that Appellant

---

[1] The record indicates that Appellant's boyfriend, Raymond Reynolds, was also prosecuted for felonious assault stemming from this incident.  The parties both represent that he was acquitted of felonious assault and was instead only found guilty of assault.  However, no evidence in the form of case documents or certified copies of Reynolds' conviction were entered into evidence.

was involved in the altercation at all.  Instead, Reynolds testified that Mr. Wells started the fight by hitting him with his walking stick.

{¶6}  The victim testified that he was in tremendous pain as a result of being punched by Reynolds and feared that his eyeball was out of the socket. He further testified that the blow from the rock rendered him nearly incoherent and that everything after that time was hazy.  He testified that although life flight was called to the scene, bad weather prevented a helicopter from being able to be used and, as a result, he was instead transported to the hospital by ambulance.

{¶7}  The victim and his wife both testified as to his injuries, explaining that he received stitches for lacerations to his eye and forehead, and that he also sustained a fractured thumb, which occurred when the rock hit his thumb after it hit his head.  The victim's CT scan was negative and it was determined he did not have a concussion.  The victim testified that while his vision was 20/30 prior to the accident, as well as immediately after the accident, his vision deteriorated to 20/200 within a few months after the accident.  The defense, however, introduced evidence that the victim had a pre-existing eye condition that also could have contributed to the deterioration in his vision.

{¶8} The jury ultimately convicted Appellant of the felonious assault charge contained in count one, but acquitted her of the felonious assault charge contained in count two. Instead, the jury convicted her of the lesser-included offense of assault as to count two. Fourteen days later, Appellant filed a post-verdict Crim.R. 29 motion for judgment of acquittal, which was denied by the trial court. Appellant now brings her timely appeal, assigning three errors for this Court's review.

## ASSIGNMENT OF ERROR

"I.     THE JURY'S FINDING THAT LALONI MILLER ASSAULTED KENNETH WELLS IN ANY MANNER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.     THE STATE PRESENTED INSUFFICIENT EVIDENCE THAT KENNETH WELLS SUFFERED 'SERIOUS PHYSICAL HARM' AND THAT LALONI MILLER CAUSED THAT SERIOUS PHYSICAL HARM.

III.    THE TRIAL COURT ERRED BY OVERRULING MS. MILLER'S CRIM.R. 29 MOTION FOR JUDGMENT OF ACQUITTAL."

## ASSIGNMENT OF ERROR III

{¶9} For ease of analysis, we initially address Appellant's third assignment of error, out of order. In her third assignment of error, Appellant contends the trial court erred in overruling her Crim.R. 29 motion for judgment of acquittal. Appellant's argument on appeal, under this assignment of error, is that because her co-defendant, Raymond Reynolds,

was tried and found not guilty of felonious assault as to same victim, herein

Kenneth Wells, that she should have been found not guilty as well.  Stated

another way, Appellant argues that the injuries suffered by Kenneth Wells in

both cases were the same, and that if the trial court determined Mr. Wells

did not suffer serious physical harm in the case against Reynolds, which was

tried to the court, that he could not have suffered serious physical harm

arising from Appellant's actions either.  Appellant argues that "[t]his

concept, that a factual finding made in one case against one defendant can be

used defensively in another case against another defendant, is known as non-

mutual defensive collateral estoppel (or non-mutual defensive issue

preclusion)."

{¶10}  As set forth above, Appellant filed a post-judgment Crim.R. 29

motion for acquittal fourteen days after the jury found her guilty of felonious

assault and assault.  The First District Court of Appeals recently explained

the standard of review when considering a post-judgment motion for

judgment of acquittal in *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶

16, as follows:

> "The standard for reviewing a post-verdict motion for judgment
> of acquittal made pursuant to Crim.R. 29(C) is identical to the
> standard for reviewing a motion for an acquittal made during a
> trial pursuant to Crim.R. 29(A). *See State v. Metcalf*, 1st Dist.
> Hamilton No. C–950190, 1996 WL 411620, *1 (July 24, 1996);
> *see also State v. Misch*, 101 Ohio App.3d 640, 650, 656 N.E.2d

381 (6th Dist. 1995). On review of a Crim.R. 29(C) post-verdict motion for judgment of acquittal, a court must view the evidence in a light most favorable to the state to determine if reasonable minds could differ as to whether each material element of the crime has been proven beyond a reasonable doubt. *See State v. Callins*, 1st Dist. Hamilton No. C–930428, 1994 WL 376752, *1 (July 20, 1994), citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus; *but see State v. Wright*, 1st Dist. Hamilton. No. C-080437, 2009-Ohio-5474, 2009 WL 3323337, ¶ 26 (applying the standard used to review a sufficiency-of-the-evidence claim)."

{¶11} The *Harris* court further explained that "a Crim.R. 29(C) motion is not merely a delayed motion for judgment of acquittal. It can be used [] to challenge defects in the sufficiency of the evidence that only become apparent after the jury returns its verdicts." *Harris* at ¶ 14; citing *State v. Glenn*, 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, 2011 WL 686202, ¶ 68.       Additionally, as explained in *Harris*, "[a] defendant does not forfeit issues that he has raised with specificity in a timely Crim.R. 29(C) motion."  *Harris* at ¶ 15.  In *Harris*, it was determined that the defendant preserved an inconsistent verdicts issue for appellate review where he raised the issue in both his oral and written post-verdict motions. *Id.*

{¶12} Here, although Appellant timely filed her post-verdict Crim.R. 29 motion for judgment of acquittal, the grounds now asserted on appeal, non-mutual defensive collateral estoppel, or issue preclusion, was not clearly asserted in the post-verdict motion.  In fact, as in *Harris*, *supra*, the only

arguments asserted in his Crim.R. 29 motion for judgment of acquittal were that the jury verdicts were internally inconsistent, and inconsistent with the prior bench trial decision of her co-defendant.  Appellant did not argue that the State should have been estopped, based upon a theory of defensive non-mutual collateral estoppel, from prosecuting her for felonious assault to begin with.  Appellant did not mention the phrase "collateral estoppel" until the filing of her reply brief, which was filed after the State's brief in opposition, and even then the theory of "defensive non-mutual collateral estoppel" was not asserted or argued with specificity.

{¶13}  In *McFadden v. Butler*, 166 Ohio Misc.2d 16, 2011-Ohio-6971, 961 N.E.2d 746, ¶ 1, an "apparently novel issue" was presented regarding whether a defendant may "use collateral estoppel to defeat a plaintiff's claim when the defendant has asserted a counter claim arising out of the same facts."  Specifically at issue in *McFadden*, which was an automobile negligence case, was "the preclusive effect, if any, of plaintiff Guy McFadden's prior conviction for running a red light." *Id.*  In that case, McFadden filed a complaint alleging automobile negligence against Butler claiming Butler ran a red light, despite the fact that McFadden had been previously convicted for running the red light and received a citation in the auto accident at issue. *Id.* at ¶ 2-3.

**{¶14}** The *McFadden* court discussed the doctrine of collateral

estoppel generally, explaining the doctrine as follows:

> "The doctrine of collateral estoppel has been explained to be a
> 'preclusion of the relitigation in a second action of an issue or
> issues that have been actually and necessarily litigated and
> determined in a prior action.' *Goodson v. McDonough Power
> Equip.* (1983), 2 Ohio St.3d 193, 195, 443 N.E.2d 978. There
> are two types of collateral estoppel or 'issue preclusion.'
> Offensive use of collateral estoppel 'occurs when the plaintiff
> seeks to foreclose the defendant from litigating an issue [that]
> the defendant has previously litigated unsuccessfully in an
> action with another party.' *Parklane Hosiery Co. v. Shore*
> (1979), 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552.
> Defensive use of collateral estoppel occurs when a defendant
> seeks to prevent a plaintiff from asserting a claim that the
> plaintiff has previously litigated unsuccessfully in another
> action. *Id.*" *McFadden* at ¶ 4.

Here, much like Butler, Appellant seeks to use the doctrine defensively.

**{¶15}** *McFadden* further noted as follows regarding the use of both

offensive and defensive collateral estoppel:

> "While federal courts have allowed the use of both
> defensive and offensive collateral estoppel in appropriate
> circumstances, *see Parklane*, 439 U.S. at 323–325, 99 S.Ct.
> 645, 58 L.Ed.2d 552, Ohio courts have been more cautious.
> Ohio traditionally has required a strict mutuality of parties for
> the application of the doctrine. *Goodson*, 2 Ohio St.3d 193, 443
> N.E.2d 978, at paragraph one of the syllabus. In reaching its

decision in *Goodson* requiring mutuality of parties, the Ohio Supreme Court acknowledged that in an earlier case, *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 369 N.E.2d 776, it had allowed the use of offensive collateral estoppel under the facts of that case. *Goodson* at 199, 443 N.E.2d 978. The court explained in *Goodson*, however, that *Hicks* was not an abandonment of the mutuality rule but simply a demonstration that the court '[was] willing to relax the [mutuality] rule where justice would reasonably require it.' *Id.*

The trend in lower courts in Ohio since Goodson has been in the direction of relaxing the mutuality requirement to allow for at least the defensive use of collateral estoppel. *See, e.g., Frank v. Simon*, Lucas App. No. L–06–1185, 2007-Ohio-1324, 2007 WL 866998, at ¶ 12 ('[t]he defensive use of collateral estoppel has been upheld in the majority of Ohio appellate courts'). The First District Court of Appeals explicitly has recognized nonmutual defensive collateral estoppel. *Mitchell v. Internatl. Flavors, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37.

In *Mitchell*, the court held that 'collateral estoppel applies when (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous action after a full and fair opportunity to litigate the issue; (3) the issue was admitted or actually tried and decided and was necessary to the final judgment; and (4) the issue was identical to the issue involved in the new action.' *Id.* at ¶ 14." *McFadden* at ¶ 5-7.

The *McFadden* court ultimately determined that all of the elements of collateral estoppel were met, and specifically found that the factual issue in the prior criminal bench trial, (i.e. whether McFadden ran the red light causing the accident), was identical to the issue in the pending civil action. *Id.* at ¶ 8.

{¶16} The *McFadden* case obviously involved an attempt by a private litigant to apply the doctrine of non-mutual defensive collateral estoppel as against another private litigant in civil litigation occurring subsequent to criminal litigation involving the State. Here, Appellant appears to attempt to collaterally estop the State, despite the fact that she failed to raise this issue until after the State successfully prosecuted her, from convicting her of committing felonious assault with respect to the

victim, Kenneth Wells, based upon the fact that her co-defendant was acquitted of felonious assault stemming from the same incident with the same victim. Appellant argues that her co-defendant was acquitted because the trial court, after a bench trial, determined that the victim did not sustain serious physical injury. As such, she argues the State should not be able to assert in the prosecution against her that the victim sustained serious physical injury, when it was already determined in prior litigation against her co-defendant that the victim did not sustain serious physical injury.

{¶17} The United States Supreme Court discussed the doctrine of "nonmutual collateral estoppel" in *Standefer v. U.S.*, 447 U.S. 10, 100 S.Ct. 1999 (1980), in the context of a request by a criminal defendant to apply the doctrine of non-mutual collateral estoppel against the government in a criminal case. Standefer was convicted for aiding and abetting an IRS agent in accepting unlawful compensation, even though the IRS agent had been acquitted on charges arising from the same incident. *Id.* The *Standefer* Court acknowledged its first application of the doctrine was in the case of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434 (1971), which held "that a determination of patent invalidity in a prior patent infringement action was entitled to preclusive effect against a patentee in subsequent litigation against a different

defendant." *Id.* at 21.  The Court further acknowledged its later application of the doctrine, offensively, in *Parklane Hosiery Co. v. Shore, supra*, which held "that a defendant who had had a 'full and fair' opportunity to litigate issues of fact in a civil proceeding initiated by the Securities and Exchange Commission could be estopped from relitigating those issues in a subsequent action brought by a private plaintiff." *Id.*  The *Standefer* Court noted that in both of those situations, "application of nonmutual estoppel promoted judicial economy and conserved private resources." *Id.*  The Court then went on to note a distinction in those cases compared to the facts presently before it, which urged application of the doctrine against the government, in a criminal case. *Id.* at 21-22.

{¶18}  The *Standefer* Court went on to discuss the considerations and complicated application of the doctrine to the government in criminal cases, including the fact that the government cannot secure appellate review where a defendant has been acquitted, that criminal cases permit juries to acquit out of compassion or compromise, or through the exercise of lenity, and that under "contemporary principles of collateral estoppel[,]" such factors strongly "militate[] against giving an acquittal preclusive effect." *Id.* at 22-23; citing *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192 (1896); and quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189 (1932);

in turn quoting *Steckler v. United States*, 7 F.2d 59, 60 (CA2 1925) (additional internal citations omitted). The Court further reasoned that "application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law[,]" noting that "[i]t is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another." *Id.* at 23.

{¶19} Finally, the *Standefer* Court stated that the case presently before it involved an "ingredient" not present in either *Blonder-Tongue* or *Parklane Hosiery*, which was "the important federal interest in the enforcement of the criminal law." *Id.* at 24. That same concern exists in the case presently before us, albeit the enforcement of state, rather than federal law. Ultimately, the Court denied the preclusive effect of Standefer's codefendant's acquittal. *Id.* at 25. In reaching its decision, the *Standefer* Court stated as follows:

> "This case does no more than manifest the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.' *Roth v. United States*, 354 U.S. 476, 492, n. 30, 77 S.Ct. 1304, 1313, n. 30, 1 L.Ed.2d 1498 (1957). While symmetry of results may be intellectually satisfying, it is not required. *See Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974)." *Standefer* at 25.

{¶20} Four years later in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, syllabus (1984), Justice Rehnquist authored a unanimous opinion holding that the United States could not be collaterally estopped from seeking adjudication on an issue that had been adjudicated against in an earlier lawsuit brought by a different party, which involved the naturalization of Filipino nationals. In reaching its decision, the *Mendoza* Court reasoned as follows:

> "[a] rule allowing nonmutual collateral estoppel against the Government would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue, and would require substantial revision of the Solicitor General's policy for determining when to appeal an adverse decision." *Id.* at section (B) of the syllabus.

The Court further reasoned as follows:

> "The conduct of Government litigation in the federal courts is sufficiently different from the conduct of private civil litigation in those courts so that what might otherwise be economy interests underlying a broad application of nonmutual collateral

estoppel are outweighed by the constraints which peculiarly

affect the Government." *Id.* at section (c) of the syllabus.

Thus, the *Mendoza* decision "was most significant because of the Court's

decision to bar the general use of nonmutual collateral estopped against the

government." *Supreme Court Doctrine in the Trenches: The Case of*

*Collateral Estoppel*, William and Mary Law Review Vol. 27, Issue 1 (1985).

{¶21} Here, even if the mere mention of "collateral estoppel" in

Appellant's reply memorandum, filed after her initial Crim.R. 29 motion for

judgment of acquittal, served to preserve this argument on appeal, we agree

with the State's contention that Appellant has not demonstrated that the issue

currently on appeal is identical to the issue which led to an acquittal in her

co-defendant's case.  Appellant's co-defendant's acquittal may have been

based upon a determination that the co-defendant did not cause serious

physical injury to the victim, not that the victim did not sustain serious

physical injury at all, as argued by Appellant.   Further, and importantly, we

are limited in our review of this issue because Appellant has failed to

provide this Court with the pertinent and necessary portions of the record

from her co-defendant's case required to properly review her assigned error.

In fact, other than references to fact patterns and outcomes in her co-

defendant's case, Appellant has not provided any documentation at all from that case.

{¶22} Although this Court may take judicial notice of information contained in the online docket detailing the court filings and judgment issued in her co-defendant's case, the information contained in the online docket does not provide the detail required to discern whether the specific issue raised by Appellant herein was at issue in the prior co-defendant case. For instance, Appellant urges this Court to accept that the trial court determined, in her co-defendant's bench trial, that the victim did not sustain serious physical injury to satisfy the requirement for proving felonious assault. However, there is no way to confirm that was the finding in the prior bench trial. The trial court may have found that while the victim sustained serious physical injury, Appellant's co-defendant did not cause it. Any conclusions made by this Court as to the exact issue or reason that led to an acquittal of Appellant's co-defendant on the felonious assault charge with respect to the victim herein would be the result of improper speculation, the exercise of which we will not engage.

{¶23} Additionally, because Appellant urges this Court to apply the doctrine of non-mutual defensive collateral estoppel in a criminal context, which poses all the same concerns and considerations as discussed in

*Standefer*, and without citing this Court to any Ohio authority supporting the application as between two criminal cases involving different parties, we reject Appellant's urging to do so. This is true, especially considering the fact that Appellant has failed to properly place in evidence or include in the record any official court filings, judgment entries or transcripts from her co-defendant's criminal trial. Without this information, we are unable to determine if all of the elements of collateral estoppel have been met, particularly the element which requires the specific issue to be identical in each case. Accordingly, we find no merit to Appellant's third assignment of error and it is therefore overruled.

## ASSIGNMENT OF ERROR II

{¶24} We next address Appellant's first and second assignments of error, in conjunction with one another, for ease of analysis. In her first assignment of error, Appellant contends that the jury's finding that she assaulted Kenneth Wells, the victim herein, in any manner is against the manifest weight of the evidence. In her second assignment of error, Appellant contends that the State presented insufficient evidence that 1) Kenneth Wells suffered "serious physical harm;" and 2) Appellant caused that serious physical harm. In support of her contentions, Appellant argues that the injuries suffered by the victim do not rise to the level of "serious

physical harm" as required by the statute. Appellant also argues that even if she did assault the victim, the State did not prove beyond a reasonable doubt that this assault caused the serious physical harm. The State contends, on the other hand, that it presented sufficient evidence that the victim sustained serious physical harm caused by Appellant, and that "Appellant begs this Court to overturn the jury verdict simply because the jury did not believe [her] story."

**{¶25}** "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

**{¶26}** "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

**{¶27}** In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire

record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

**{¶28}** "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland* at ¶ 132. The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

**{¶29}** As set forth above, Appellant was originally indicted on two counts of felonious assault in violation of R.C. 2903.11. Count one charged Appellant with a violation of R.C. 2903.11(A)(1), which provides as follows:

"(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's

unborn[.]"

Count two charged Appellant with a violation of R.C. 2903.11(A)(2), which

provides as follows:

"(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to

another's unborn by means of a deadly weapon or dangerous

ordnance."

{¶30} R.C. 2901.22(B) defines "knowingly" as follows:

"A person acts knowingly, regardless of purpose, when the

person is aware that the person's conduct will probably cause a

certain result or will probably be of a certain nature. A person

has knowledge of circumstances when the person is aware that

such circumstances probably exist."

"Serious physical harm" is defined under R.C. 2901.01(A)(5)(c), (d), and (e)

as including harm that produces "temporary, substantial incapacity,"

"temporary, serious disfigurement," or "acute pain of such duration as to

result in substantial suffering or that involves any degree of prolonged or

intractable pain." *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 25 (4th Dist.); quoting *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 23.

**{¶31}** The jury found Appellant guilty of count one, as charged, but acquitted Appellant on count two. The jury instead found Appellant guilty of a lesser-included offense of first-degree misdemeanor assault on count two. R.C. 2903.13 governs assault, and provides in section (A)(1) that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Appellant asserts that because the jury acquitted her on count two, it must have determined that she did not use a rock to assault the victim, and that there was no testimony at all that she struck the victim with her hand. However, in denying her Crim.R. 29 motion for judgment of acquittal, the trial court stated as follows:

> "This Court believes that the verdict on Count II is likely the
> result of the jury believing that a rock is not a deadly weapon.
> As such, the verdicts are not inconsistent."

We agree with the reasoning of the trial court, based upon the testimony introduced by the State at trial.

**{¶32}** Appellant argues that what is in dispute in this case is whether she participated in the assault of the victim, or whether she was a bystander.

She further argues that the jury's conclusion that she struck the victim in the head with a fifteen pound rock is physically impossible based upon the medical evidence. She asserts that the fact that the victim did not sustain a severe injury, specifically that he did not have a concussion and had a negative MRI and CT scan of his head, are incompatible with the State's allegations against her. Appellant also references law enforcement's failure to obtain fingerprints or other DNA samples from the rock that was alleged to have been used, as well as the fact that no blood could be seen on the rock.

{¶33} Further, with regard to who inflicted the injuries upon the victim, and Appellant's argument that she didn't assault the victim, let alone commit felonious assault, Appellant argues that the victim acknowledged at trial that her co-defendant's acts of punching him twice is what damaged his eye, and that the injury to the victim's eye is "the only damage that could be characterized as 'serious physical harm'." Appellant urges this Court to accept another "more plausible" scenario, which involves the victim striking Appellant's co-defendant and breaking his own thumb and then concocting a claim that Appellant struck him with a rock in order to claim self-defense, with the ultimate goal of ridding himself of his troublesome neighbors by ensuring they were sentenced to prison.

{¶34}  Additionally, Appellant argues that the State failed to prove the victim sustained "serious physical harm" as required by the felonious assault statute.  Appellant again references the fact that the victim had no concussion and no skull fracture, had no permanent disfigurement or scarring, and that his vision immediately after the accident was the same as it was before the accident.  Appellant asserts that the victim's testimony regarding being in pain was related to the pain that occurred as a result of the punches thrown by her co-defendant.  Appellant, however, concedes that R.C. 2901.01(A)(5)(c) arguably applies, which includes within the definition of serious physical harm "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity[.]"  Finally, Appellant suggests that in the absence of expert testimony as to the severity and permanent nature of the injury, there was insufficient evidence to prove the victim suffered serious physical harm.

{¶35}  Here, the State presented the testimony of the victim at trial.  The victim testified that upon entering the roadway to retrieve his dog, Appellant's co-defendant, Raymond Reynolds, sucker punched him in the left eye and on the right side his cheek.  He testified that he was hit so hard he almost lost consciousness.  He testified that as he reached up to grab his eye, which was bleeding badly, his wife alerted him that Appellant was

approaching him.  He testified that as he turned to look for Appellant, she hit him with a sixteen-pound rock on his "right forehead."  He testified that from that point on "it was very hazy because I had almost lost consciousness at that point."  He further testified as follows:

> "That's a sixteen-pound rock, nearly sixteen pounds and it hit me here.  If it would have been two inches lower it would have hit me in the temple.  I probably wouldn't be sitting here today. I think she attempted to kill me."

Regarding his condition after being hit with the rock, the victim testified as follows:  "I say it was real hazy I mean I'd just been hit with that sixteen-pound rock and I wasn't very coherent.  I'm really surprised I didn't faint, pass out whatever * * *."  The victim further testified that Appellant's co-defendant hit him so hard he thought he would lose his eye, stating as follows:

> "He hit me so hard that I thought my eye was out at that time because it hurt tremendously and I couldn't hardly hold my hand on it I mean it was but I knew my eye ball wasn't out."

{¶36}  The victim further testified that he was transported to the hospital via ambulance, and that although life flight was initially called, they couldn't get there because the weather was too bad.  Appellant testified that

although it was determined he did not have a concussion, he had bad cuts on his eye and forehead and received stitches for those injuries. Further, and importantly, the victim testified that he sustained a fractured thumb, which occurred as a result of the rock hitting his thumb after it hit his head. The victim denied striking either Appellant or her co-defendant, but testified that he sprayed pepper spray on Appellant after she struck him with the rock.

{¶37} Appellant's wife, Lorrene Wells, also testified at trial. She testified that she saw Appellant strike her husband with a rock. She further identified a laceration appearing on the right side of the victim's head, as shown to her in a photo which was also submitted to the jury, and testified it was from being hit with the rock. Additionally, photographs submitted to the jury depict the victim in a neck brace with bleeding all around his left eye and running down his face. They also demonstrate a laceration to the top right side of the victim's forehead consistent with where both Lorrene and Kenneth Wells testified the rock struck him.

{¶38} Thus, according to the victim and his wife's testimony, Appellant struck Mr. Wells with a sixteen-pound rock in the right side of his forehead, just after he had been punched very hard, to the extent he was in "tremendous" pain and feared his eyeball was actually out of the socket. A laceration to that area was visible on photographs submitted to the jury and

the victim's wife identified a laceration caused from the rock. Further, according to the victim's testimony, after being hit with the rock he was very hazy and incoherent, and he also sustained a fracture to his thumb from the rock after the rock hit his head. Raymond Reynolds testified to a different version of events. He testified that the victim came out into the street and initiated the altercation by striking Reynolds with his walking stick. He further testified that Appellant was not involved in the altercation.

{¶39} In *State v. Blanton*, 4th Dist. Adams No. 16CA1035, 2018-Ohio-1278, -- N.E.3d -- , ¶ 30, we observed that *In re Miller*, 11th Dist. Ashtabula No. 2000-A-0014, 2002-Ohio-3360, was instructive in a scenario regarding harm inflicted by more than one individual. In *Blanton*, we observed that in *Miller*, in response to an argument that the victim had been kicked in the head by several other people before Miller became involved in the fight and that it was impossible to sort out which blow to the victim's head caused what amount of damage, it was reasoned as follows:

> " '[As to the persons kicking the victim] Those actions caused serious physical harm. Assuming, for purposes of this point, that they did, a party cannot then jump on top of the victim bargaining only for a "regular" assault by hitting the victim in a manner that may not, under normal circumstances, cause

serious physical harm. If, in fact, appellant did not enter the

melee until the victim had already suffered serious physical

harm, his actions are all the more inculpatory. Harm heaped on

top of serious physical harm must itself be considered serious

physical harm even if under different circumstances it may not

have risen to that level. It is impossible to sort out which blow

to the victim's head caused what amount of damage. Those that

assaulted him all contributed jointly in the harm the victim

suffered.' " *Blanton* at ¶ 30; quoting *In re Miller* at ¶ 31.

**{¶40}** In *Blanton*, we reasoned that the victim's injuries, which

included a possible concussion, two black eyes, bruising of eyes, ear, neck,

stomach and back, a busted lip and a gash on the head, despite the absence

of fractures of the head, elbow and chest as confirmed by a CT scan and x-

rays, rose to the level of serious physical injury for purposes of establishing

felonious assault. *Blanton* at ¶ 31-32, 34.  In reaching our decision, we

observed as follows:

" 'The degree of harm that rises to the level of "serious"

physical harm is not an exact science, particularly when the

definition includes such terms as "substantial," "temporary,"

"acute," and "prolonged." ' *Id.* at ¶ 26, quoting *State v. Mango*,

8th Dist. Cuyahoga No. 103146, 2016-Ohio-2935, 2016 WL

2756627, ¶ 33. (Internal citations omitted.) The statute does not

define 'substantial suffering'; instead, the trier-of-fact must

determine its existence from the facts of each particular case.

*State v. Bell*, 1989 WL 10372, (Feb. 7, 1989), *2. (Internal

citations omitted.) 'Physical harm to persons' means 'any injury,

illness, or other physiological impairment, regardless of its

gravity or duration.' R.C. 2901.01(A)(3) *State v. Henry*, 8th

Dist. Cuyahoga No. 10002634, 2016-Ohio-692, 2016 WL

762573, ¶ 40." *Blanton* at ¶ 34; quoting *State v. Adams*, 2016-

Ohio-7772, 84 N.E.3d 155, ¶ 26 (4th Dist.).

**{¶41}** We further noted in ¶ 35 of *Blanton* as follows regarding what

may constitute serious physical injury:

"The *Henry* court observed that serious physical harm has been

found where a victim sustains a bloody cut and/or significant

swelling to the face because this is sufficient to establish

serious physical harm in that it constitutes 'temporary, serious

disfigurement.' *Id.* at ¶ 42. Courts have also determined that

'serious physical harm' exists ' "where the injuries caused the

victim to seek medical treatment." " *Adams*, *supra*, at ¶ 30,

quoting *Scott*, *supra*, at ¶ 3. (Internal citations omitted.)"

**{¶42}** In light of the foregoing case law, as applied to the evidence

introduced by the State at trial, we believe the jury could have reasonably

concluded that Appellant knowingly caused serious physical harm to the

victim herein.  As indicated above, although Appellant was acquitted of the

felonious assault charge contained in count two, which specified the use of a

deadly weapon, we agree with the trial court's conclusion that the jury likely

acquitted on that charge based upon a failure to find the rock constituted a

deadly weapon, rather than a finding that a rock was not used in the

commission of the offense.  Thus, the conviction on the lesser-included

offense charge of assault was appropriate given the evidence presented at

trial.

**{¶43}** Further, with respect to Appellant's urging that we accept an

alternate pattern of facts which involved Appellant simply being an innocent

bystander and the victim concocting a story to be able to claim self-defense

and get rid of his neighbors, we decline the invitation.  As set forth above,

the weight and credibility of the evidence are to be determined by the trier of

fact. *Kirkland* at ¶ 132. The trier of fact is free to believe all, part, or none of

the testimony of any witness.  The jury apparently believed the State's

version of the facts over Appellant's. Further, there was evidence in the record which supported the jury's decision and, therefore, we cannot conclude this is a case in which the jury lost its way.

{¶44} We further note that "[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution's testimony." *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 17; quoting *State v. Mason*, 9th Dist. No. 21397, 2003-Ohio-5785, ¶ 17; quoting *State v. Gilliam*, 9th Dist. No. 97CA006757, 1998 WL 487085 (Aug. 12, 1998). Moreover, a conviction is not against the manifest weight of the evidence even if the "evidence is subject to different interpretations." *State v. Adams*, 2nd Dist. Greene Nos. 2013CA61, 2013–CA–62, 2014-Ohio-3432, ¶ 24. Instead, a reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541(1997).

{¶45} In light of the foregoing, and based on this record, we cannot conclude that Appellant's convictions for felonious assault and assault are against the manifest weight of the evidence. Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's

conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27. Having already determined that Appellant's convictions are not against the manifest weight of the evidence, we necessarily reject Appellant's additional claim that her convictions are not supported by sufficient evidence.  Thus, we reject both the manifest weight and sufficiency portions of Appellant's argument and overrule Appellant's first and second assignments of error.

{¶46}  Having found no merit to the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland

### **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**