[Cite as *State v. Janson*, 2020-Ohio-4525.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0018** |
| JOSEPH RALPH JANSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CR 00542.

Judgment: Modified and affirmed as modified.

*Cecilia M. Cooper,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, 25 West Jefferson Street, Jefferson, Ohio 44047 (For Plaintiff-Appellee).

*Thomas Rein,* 820 West Superior Avenue, Suite 800, Cleveland, Ohio 44113 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Joseph Ralph Janson, appeals his conviction for aggravated possession of drugs following a jury trial. We modify the court's decision and affirm as modified.

{¶2} Janson was convicted of one count of aggravated possession of drugs, a fifth-degree felony, in violation of R.C. 2925.11(A)(C)(1)(a) and was sentenced to eight

months in the Ashtabula County Jail.  The charge stems from seven oxycodone pills found in his girlfriend's car.

{¶3}    Janson raises four assigned errors.  We address his first two collectively, which assert:

{¶4}    "[1.] The State failed to present sufficient evidence to sustain a conviction against Appellant (T.p. 210, 270).

{¶5}    "[2.] Appellant's conviction is against the manifest weight of the evidence (T.p. 299, Jury Verdict)."

{¶6}    When an appellate court finds that a defendant's conviction is supported by the weight of the evidence, this conclusion includes a finding that sufficient evidence supports the conviction.  *State v. Smith*, 11th Dist. Portage No. 2016-P-0074, 2018-Ohio-4799, ¶ 53, *appeal not allowed,* 157 Ohio St.3d 1564, 2020-Ohio-313, 138 N.E.3d 1165.

{¶7}    Sufficiency is "a term of art meaning that legal standard which is applied to determine whether the case may go to the [finder of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law. * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law."  *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶8}    "In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable

doubt. *Id.*" *State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, 96 N.E.3d 1046, ¶95, *appeal not allowed,* 151 Ohio St.3d 1515, 2018-Ohio-365, 90 N.E.3d 952.

{¶9} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' (Emphasis added.) [Black's Law Dictionary (6 Ed.1990) ], at 1594.

{¶10} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * * *See, also, State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be

3

exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." *Thompkins*, *supra*.

{¶11} "The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. * * *." *State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 28.

{¶12} As stated, Janson was convicted of R.C. 2925.11(A)(C)(1)(a), which states in part:

{¶13} "(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

{¶14} "* * *

{¶15} "(C) * * *

{¶16} "(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, * * * whoever violates division (A) of this section is guilty of aggravated possession of drugs."

{¶17} In February 2018, Ohio State Highway Patrol Trooper James Cvengros was dispatched to a motor vehicle accident. When he arrived at the scene, he found an abandoned car on the side of the road stuck in the snow. It was a snowy night and the roads were icy. Dispatch called the record owner of the vehicle, who answered the phone while Cvengros was still at the scene. The owner of the car, Sarah Perkins, was Janson's live-in girlfriend. She was at work at the time and not aware of the accident.

4

{¶18} Cvengros had the car towed and during the routine inventory search he found seven pink pills in a stamp-sized baggie under the driver's seat. The outside of the baggie had pre-printed dollar signs on it. In Cvengros' experience, this type of baggie usually contains illegal drugs. Testing confirmed that the pills were oxycodone.

{¶19} After learning that Janson was the driver of the car that night, Cvengros asked Janson to meet him at the police station to discuss the crash. Janson was very forthcoming and told Cvengros that he had hit a patch of ice in the road, lost control of the car, and got stuck in the snow. Janson did not report the accident because he did not have his phone with him and did not want to pay for a tow.

{¶20} Toward the end of the interview, Cvengros read Janson his Miranda rights and asked him about the oxycodone pills. Janson told Cvengros that the pills were his and that he wanted to claim ownership of the pills to keep his girlfriend out of trouble. Before Janson left, Cvengros had Janson approve and sign an interview statement that was introduced at trial. The statement was handwritten by Cvengros and signed by Janson. It states in part:

{¶21} "Q) During an administrative inventory of your vehicle, seven oxycodone 10 mg pills were located under the driver['s] seat. Do you claim ownership to the seven oxycodone pills that were located?

{¶22} "A) Yes.

{¶23} "* * *

{¶24} "Q) You are aware and were advised claiming ownership of the seven hydrocodone pills is a felony of the fifth degree under the Ohio Revised Code 2925.11C1, possession of a schedule II controlled substance?

5

{¶25} "A) Yes."

{¶26} Janson testified that he lives with his girlfriend, who owns the car, and he drives it frequently. He drove that snowy night to buy cigarettes and something to drink. After getting stuck, he left the car on the side of the road, walked home, and went to sleep. Janson said he was shocked to learn that there were any pills under the seat, and he had never seen them before. He also testified that some of his employees had driven the car, but he did not identify any as the owner of the pills.

{¶27} Janson explained that he only claimed ownership of the pills because the trooper threatened to arrest Janson's girlfriend while she was at work that night. Janson wanted to protect her.

{¶28} Robin Luke, a friend of Janson's testified for the defense and explained that she takes 10 milligram oxycodone pills for severe back pain. She is prescribed 180 pills per month. Because the bottle is so big, Luke often carries a smaller number of oxycodone pills on her person in a small baggie like the one found in Perkin's car. Further, on one occasion, Luke drove Perkin's car to go to the store while Janson was changing the oil on Luke's car. Luke does not recall losing her pills in Perkin's vehicle, but with some prodding, she remembered losing a baggie of pills on one occasion but had no idea where she lost them.

{¶29} Luke could not describe Perkin's car at trial and said it was dark colored, but it was silver. Luke never went to the police to tell them the pills found in Perkin's car were actually Luke's and not Janson's.

6

{¶30}  Based on the foregoing, we disagree that Janson's conviction is against the manifest weight of the evidence.  Cvengros testified that Janson admitted that the pills belonged to him, and the written and signed statement confirms this.

{¶31}  And despite Janson's testimony that he felt pressure to claim ownership of the pills and Luke's testimony that pills were hers, we must defer to the jury's decision on weight and credibility issues.  The jury is "in the best position to judge the credibility of the witnesses, observe their demeanor, voice inflections, and gestures, and use these observations to weigh the credibility of all the evidence." *State v. Ryan*, 11th Dist. Ashtabula No. 2016-A-0036, 2018-Ohio-2600, 115 N.E.3d 659, ¶ 83.  We see no reason to second guess the jury's resolution of the conflicting evidence here.

{¶32}  Thus, Janson's first and second assigned errors lack merit.  His conviction is neither against the manifest weight of the evidence nor supported by insufficient evidence.

{¶33}  Janson's third assigned error contends:

{¶34}  "[3.]  The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution when it did not permit critical evidence to be admitted at trial (T.p. 237-2 39)."

{¶35}  Janson argues an abuse of discretion based on the trial court's exclusion of Luke's pharmacy records reflecting she was prescribed 180, 10 milligram oxycodone pills in February 2018.  Luke provided the two-page document to defense counsel on the morning of trial.  The state objected to admission due to lack of authentication and untimely disclosure.  The court excluded the record agreeing that there was a lack of

7

authentication and since admitting the pharmacy record without advance notice to the state is unfair.

{¶36} Evid.R. 901, *Requirement of authentication or identification*, states in part:

{¶37} "(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

{¶38} "(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

{¶39} "(1) *Testimony of Witness With Knowledge.* Testimony that a matter is what it is claimed to be."

{¶40} The document proffered on appeal depicts that it is likely a printout from Luke's pharmacy.

{¶41} "In order to properly authenticate business records, a witness must 'testify as to the regularity and reliability of the business activity involved in the creation of the record.' *Hirtzinger* at 49, 124 Ohio App.3d 40, 705 N.E.2d 395. Firsthand knowledge of the transaction is not required by the witness providing the foundation; however '"it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6)."' *State v. Vrona* (1988), 47 Ohio App.3d 145, 148, 547 N.E.2d 1189, *quoting* 1 Weissenberger's Ohio Evidence (1985) 75-76 Section 803.79.

See, also, *Moore* at ¶ 18." *Deutsche Bank National Trust Co. v. Hansen,* 5th Dist. Fairfield No.2010 CA 00001, 2011-Ohio-1223, ¶ 26." *State v. Coleman*, 5th Dist. Richland No. 14-CA-82, 2015-Ohio-3907, ¶ 36.

{¶42} The defense did not offer a witness or proffer authentication testimony. The trial court, therefore, properly excluded the document on this basis, and we need not address the other reason for exclusion, untimely disclosure. Janson's third assignment lacks merit.

{¶43} Janson's fourth and final assigned error asserts:

{¶44} "[4.] The trial court erred by ordering Appellant to serve a sentence which is contrary to law when it ordered an eight (8) month sentence to be served in the Ashtabula County jail for a felony conviction (Sentencing Transcript - T.p. 6)."

{¶45} Janson argues his eight-month sentence in the county jail exceeds that authorized by the statute, and the state concedes that Janson's sentence exceeds the amount of time a court can impose under R.C. 2929.16(A)(2).

{¶46} We review questions of law de novo. *State v. Borecky*, 11th Dist. Lake No. 2019-L-078, 2020-Ohio-3697, ¶ 20, citing *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 24, *reconsideration denied,* 154 Ohio St.3d 1467, 2018-Ohio-5210, 114 N.E.3d 217.

{¶47} Janson was convicted of one count of aggravated possession of drugs, a fifth-degree felony, in violation of R.C. 2925.11(A)(C)(1)(a) and was sentenced to eight months in the Ashtabula County Jail.

{¶48} R.C. 2925.11(C)(1)(a) states in part:

{¶49} "* * * The penalty for the offense shall be determined as follows:

9

{¶50} "(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender."

{¶51} Here, the exceptions in in division (C)(1)(b), (c), (d), or (e) of R.C. 2925.11 do not apply, and as such, R.C. 2929.13(B) determines whether to impose a prison term on the offender.

{¶52} R.C. 2929.13 states in part:

{¶53} "(B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court *shall sentence the offender to a community control sanction* or combination of community control sanctions if all of the following apply:

{¶54} "(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

{¶55} "(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

{¶56} "(iii) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed." (Emphasis added).

{¶57} A review of Janson's presentence investigation report confirms that at the time of his sentencing, Janson had not previously been convicted of a felony offense and had not been convicted of an offense of violence within two years before the instant felony

10

five offense, which is not an offense of violence or a qualifying assault. The trial court was therefore required to sentence him to a community control sanction.

{¶58} R.C. 2929.16(A), *Community residential sanctions*, states in part:

{¶59} "(A) Except as provided in this division, the court imposing a sentence for a felony upon an offender who is not required to serve a mandatory prison term may impose any community residential sanction or combination of community residential sanctions under this section. * * * Community residential sanctions include, but are not limited to, the following:

{¶60} "(1) * * * a term of up to six months at a community-based correctional facility that serves the county;

{¶61} "(2) * * * a term of up to six months in a jail;

{¶62} "* * *

{¶63} "(4) A term in a halfway house;

{¶64} "(5) A term in an alternative residential facility * * *."

{¶65} The trial court first erred in not sentencing Janson to community control sanctions because R.C. 2929.13 requires it. Moreover, and as argued, Janson's eight-month jail sentence exceeds that authorized under R.C. 2929.16(A)(2), which permits the imposition of a term of *up to six months in a jail*, not more.

{¶66} Because a sentence in excess of six month is not permitted, the court erred as a matter of law. *State v. Cornwell*, 5th Dist. Holmes No. 19CA001, 2019-Ohio-4643, 136 N.E.3d 564, ¶ 24. Thus, Janson's final assignment has merit.

11

{¶67} Janson's conviction is modified.  His sentence is reduced to six months from eight months in the county jail.  The trial court's judgment is affirmed as modified.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.