[Cite as *State v. Lavean*, 2021-Ohio-1456.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-L-045** |
| DONALD J. LAVEAN, III, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2019 CR 000642.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel* and *Adam M. Downing*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, Ohio 44123 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Donald J. Lavean, III, appeals his convictions for felonious assault with a firearm specification; improperly handling a firearm in a motor vehicle; two counts of aggravated trafficking in drugs; aggravated possession of drugs; using a weapon while intoxicated; and having a weapon while under a disability. For the following reasons, we affirm.

{¶2} Lavean was indicted and charged with eight counts arising from an altercation and shooting outside of a bar in June 2019. He waived his right to a jury trial on one count, which was tried to the court. The remaining seven counts were tried to a jury, which found him guilty of six counts and not guilty of one.

{¶3} Lavean raises six assignments of error, which we address out of order. We address his second, third, and fourth assigned errors collectively, all of which challenge the constitutionality of the Reagan Tokes Sentencing Act:

{¶4} "2. The defendant-appellant's indeterminate prison sentence of four to six years on count one, which was ordered pursuant to the Reagan Tokes Act must be reversed as the Reagan Tokes Act unconstitutionally violates the doctrine of separation of powers.

{¶5} "3. The defendant-appellant's indeterminate prison sentence of four to six years on count one, which was ordered pursuant to the Reagan Tokes Act violates his constitutional right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Ohio Constitution.

{¶6} "4. The defendant-appellant's indeterminate prison sentence of four to six years on count one, which was ordered pursuant to the Reagan Tokes Act violates his constitutional rights to fair trial and due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments To The United States Constitution and Article I, Sections 5 & 10 of the Ohio Constitution."

{¶7} In *State v. Ferguson,* 11th Dist. Lake No. 2020-L-031, 2020-Ohio-5578, ¶ 8, *appeal accepted,* 162 Ohio St.3d 1410, 2021-Ohio-961, 165 N.E.3d 333, this court addressed the Reagan Tokes Act as follows:

The Reagan Tokes Act went into effect in Ohio on March 22, 2019. The Act requires a sentencing court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a), on or after the effective date, to order a minimum prison term under that provision and a maximum prison term as determined by R.C. 2929.144(B). The Act also sets forth a presumption that an offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B). The offender's presumptive earned early release date is determined under R.C. 2967.271(F), which permits the sentencing court to reduce the minimum term under certain circumstances. R.C. 2967.271(A)(2). The Department of Rehabilitation and Corrections ("DRC") may rebut the R.C. 2967.271(B) presumption if it determines at a hearing that certain statutorily enumerated factors apply. R.C. 2967.271(C). If the DRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period of time, which "shall not exceed the offender's maximum prison term." R.C. 2967.271(D)(1).

{¶8} Initially, we note that several districts have concluded that constitutional challenges to the Reagan Tokes Act on appeal from sentencing are not yet ripe for review because it is uncertain whether the offender's release date will extend past the minimum term of imprisonment imposed. *See State v. Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, --- N.E.3d ----, ¶ 10-18.[1]

{¶9} With respect to ripeness of constitutional challenges, this court has held:

Moreover, it is also well established that constitutional questions are not ripe for review until the necessity for a decision arises on the record before the court. * * *

---

1. This issue of whether constitutional challenges to the Reagan Tokes Act are ripe for review is currently before the Ohio Supreme Court in the certified conflict case of *State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

*State v. Spikes*, 129 Ohio App.3d 142, 145, 717 N.E.2d 386 (11th Dist.1998).

{¶10}   In *Spikes*, we concluded that constitutional challenges to Ohio's former "bad time" laws and to optional postrelease control were not ripe on appeal from sentencing, because the offender only had the "*potential* to be subjected to extended prison time or postrelease control."  (Emphasis sic.) *Id.* at 145.

{¶11}   Likewise, in the context of constitutional challenges to the Reagan Tokes Act, the Fourth, Fifth, and Sixth Districts have concluded that, as with the "bad time" law, challenges to the Reagan Tokes Act in an appeal from sentencing are prematurely raised and should instead be raised through a habeas corpus petition if the offender is held past the minimum term.   *State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2020-Ohio-6733, ¶ 21 ("a habeas corpus petition is the appropriate method for [appellant] to challenge the constitutionality of the Reagan Tokes Law when – if ever – the ODRC holds him beyond the minimum sentence"); *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, ¶ 12, appeal allowed, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1152 (inferring that "the appropriate method for Appellant to challenge the constitutionality of the presumptive release portions of R.C. 2967.271 is by filing a writ of habeas corpus if he is not released at the conclusion of his eight year minimum term of incarceration"); *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702, ¶ 12, *motion to certify allowed*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

{¶12}   Accordingly, we conclude that Lavean's challenges to the Reagan Tokes Act are not yet ripe for review.

{¶13}   We next address Lavean's first assigned error, which asserts:

4

{¶14} "1. The trial court erred when it refused to submit the defendant-appellant's proposed jury instructions on aggravated assault in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."

{¶15} Lavean contends the trial court erred by denying his request for a jury instruction for aggravated assault as an inferior offense of felonious assault. The trial court denied his request at trial after concluding it was not warranted based on the facts in evidence. We agree.

{¶16} The Ohio Supreme Court has repeatedly addressed this issue and sets forth the applicable law in *State v. Mack*, 82 Ohio St.3d 198, 200-201, 694 N.E.2d 1328 (1998):

> In *State v. Deem* * * * , 40 Ohio St.3d 205, 533 N.E.2d 294, [(1988)] [the court] held that "aggravated assault" [is] an offense of an inferior degree of felonious assault because its elements [are] identical to felonious assault except for the additional mitigating element of provocation. Thus, * * * "in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury." *Id.* [at] paragraph four of the syllabus. Furthermore, "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Deem*[ ]at paragraph five of the syllabus. In [*Deem*, the court] found that a historically stormy relationship and the bumping of the offender's car by the victim's car were insufficient, as a matter of law, to incite the offender into using deadly force. * * * Since there was insufficient evidence of provocation, [the court] held that "even though aggravated assault is an offense of an inferior degree to the indicted crime

5

[of felonious assault], an instruction thereon was not supported by the evidence presented in this case, and was properly refused." *Id.*

[Thereafter i]n *State v. Shane* * * *, 63 Ohio St.3d 630, 590 N.E.2d 272 [(1992), the court] elaborated on what constitutes "reasonably sufficient" provocation in the context of voluntary manslaughter. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." *Id.* at 634-635, 590 N.E.2d at 276. [*Shane* also held] that words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations. *Id.,* paragraph two of the syllabus.

{¶17} Here, the trial court articulated its decision and rationale during trial, explaining:

THE COURT: Defendant was requesting an instruction on the inferior offense of Aggravated Assault. The State objected to that instruction. The Court has taken the time to consider whether that instruction is appropriate in this case. And I find that it's not.

I'm going to set forth on the record why. In terms of Aggravated Assault, it is an inferior offense.

But there's a two-part test that is required. The first part is there is an objective standard in terms of whether the provocation was reasonably sufficient to bring on sudden passion or sudden fit of rage and the Defendant -- that was reasonably sufficient to consider using deadly force.

If that standard is then met, then the objective [sic.] standard is as to whether he actually was in a sudden fit of rage or sudden passion.

In this case the Court finds that the provocation was not -- even if it was provocation, first of all it has to be serious

6

provocation, and the provocation here was mere words, and it wasn't even words in this particular case that initially were even directed to the Defendant. It was a point when the Defendant, according to the testimony, and in making this decision, again I take all the evidence and the testimony which was presented on this issue in the light most favorable to the Defense, which I'm required to do in making this decision.

But the Defendant even testified that he heard the victim refer to him using a racial slur, using the "N" word, so it wasn't even directed toward him. He didn't believe it was directed toward him. He believed that he was saying something to Melissa Stalker in the car and he overheard that and then he questioned, and he said it again toward him. Again, using the "N" word to refer to him.

Which, let's make the record clear here, again the Defendant is not African American. He is Caucasian. So in terms of that word being used to seriously provoke him, doesn't make as much sense because the Defendant wasn't African American, quite frankly.

But even so, even it [sic.] was, we're talking mere words here. And words alone have been held by our Supreme Court not to constitute reasonably sufficient provocation to incite someone using deadly force.  * * * And I get that, but this certainly isn't a situation the Court finds that's an exception to that general rule. Making that -- using that racial slur to refer to him is not sufficient to incite the Defendant to use deadly force.

After that's used, he then gets out of the car with the gun already in hand. And the Court finds that the testimony and the evidence that was presented to try to show serious provocation doesn't amount to serious provocation.

The second part, that's even just as important if not more important, is that the Defendant doesn't even acknowledge doing this. He doesn't -- I mean, aggravated assault is basically saying, "Yeah, I engaged in this act. I used the deadly force to do this. But I did it because I was so angry or so provoked and such in a fit of rage and that's why I did it."

Well, he doesn't admit to doing it. He doesn't even admit to having a gun. He doesn't admit to owning a gun. Even though he told the police that he did. He doesn't admit to using a gun.

7

He doesn't admit to doing anything because he was so angry. He didn't say he did it.

So he didn't testify, that he was in this -- and all he said, and I don't even know if he said it, [defense counsel] was trying to allude that he was stressed. He was stressed and that put him in this stressful situation. But he did say, "Yes." And he may have said he was angry, but he didn't say, "Because I was this angry or stressed, that I did this." He didn't -- he denied doing anything. [Lavean] didn't admit or acknowledging [sic.] do anything. I shouldn't say he denied doing anything. He didn't acknowledge that he engaged in this act.

So the Court finds that the instruction is not warranted here. The case law that was -- again supports his is *State vs. Shane*, which is the case that stands for the proposition that words alone do not constitute reasonable sufficient provocation to inflict the use of deadly force in most situations. So that's what the Court's relying upon. I don't believe it is warranted. I'm not going to give an instruction on that.

{¶18} Lavean contends that the victim, Derek Cosic, called him names provoking him and that more than mere words transpired before the physical altercation. Lavean claims that Cosic left the car he was in to confront Lavean; that the two were arguing face to face; and that Cosic punched Lavean, who was on the ground, before Lavean fired a gun.

{¶19} Patrolman Terry Wurgler of the City of Mentor Police Department was dispatched to the 306 Lounge at approximately 3:00 a.m. He found Lavean lying in the parking lot, and a gun was on the ground. Cosic was inside the bar; he had a graze wound to his leg. There was a bullet hole in the side of Melissa Stalker's car.

{¶20} Lavean and Cosic did not know one another before the night in question. Lavean came to the bar with Stalker, but they drove separately. According to Cosic, Stalker and Lavean had been arguing in the bar earlier that evening before she went

outside to smoke. She was smoking in her car with Cosic when the fight ensued. They were in the car because it was raining.

{¶21} Lavean testified that he was in his car and Stalker was with Cosic. She had her window down, and Lavean rolled his window down to talk with her when Cosic said, "What is that n* * * doing back?" Cosic was in Stalker's passenger's seat.

{¶22} Lavean, who is Caucasian, explained that Cosic may have called him this based on his appearance, including the way he dresses. This derogatory comment made Lavean angry and stressed, so he told Cosic to "[b]e a man and say it to my face." Both men exited their cars and continued arguing. Cosic told Lavean he was going to "kill him with his fists and that he would put his fist through the back of [Lavean's] head." Cosic said he was a golden glove boxer. Lavean acknowledges hitting Cosic first.

{¶23} However, Lavean said he does not remember much after that. The next thing he remembers was "hearing voices as [he] was lying there, coming to." Then he remembers being in the police station. He had a softball-sized hematoma above his eye and a concussion. After watching his recorded interview with police, Lavean testified that he does not remember it. He said his head injuries "messed him up."

{¶24} During the recorded interview that was played at trial, Lavean admits having a gun, but he also said he thinks he may have been robbed. On cross-examination, Lavean denies owning a gun or having a gun that night, contrary to his recorded interview.

{¶25} The bar's outside surveillance footage was also played during trial. The black and white video is dark and grainy, but it shows that Lavean got out of his car first, but only a few seconds before Cosic. It also shows that Lavean has something in his right hand that looks like a handgun. Lavean then can be seen shoving whatever is in his

9

hand into Cosic's temple causing his head to dip down below his opposite shoulder. Cosic then swings at Lavean several times and knocks him to the ground.

{¶26} Cosic testified that he saw Lavean retrieving something from his waistband after Lavean pulled up in his car adjacent to Stalker's. Stalker had told Cosic that Lavean usually carries a gun.

{¶27} Cosic testified that Lavean exited his car first and approached Stalker's car with a gun. Cosic then got out of Stalker's car, and the two argued before Lavean put a gun to the side of Cosic's head. Lavean pushed him in the side of the head with a gun. In response, Cosic punched Lavean causing him to fall to the ground. Lavean then shot at Cosic several times before hitting him in the leg. Realizing he had been shot, Cosic went back and kicked Lavean in the face.

{¶28} Upon applying an objective person standard, the alleged provocation here is insufficient "to arouse the passions of an ordinary person beyond the power of his * * * control." *Shane*, 63 Ohio St.3d at 634, 590 N.E.2d 272. The two men were under the influence but had no personal history with one another. And although Lavean and Stalker had been arguing earlier in the evening, Lavean left in his car before returning and pulling into the parking spot next to Stalker's. The earlier exchange between Lavean and Stalker did not involve Cosic. Even assuming that Cosic called Lavean the "N word," Lavean is Caucasian. This court does not rule out the possibility that in some contexts an ordinary person's passions may be aroused beyond his control when called a racial slur typically used to derogate a member of a different race. However, this is not such a case. Moreover, after the men exchanged words, Lavean was the first to use force, and unlike Cosic, Lavean had a handgun.

10

{¶29} Based on these facts, Cosic's alleged provocation is insufficient to bring on a sudden passion or fit of rage in an ordinary person. Thus, we agree with the trial court that the evidence does not support giving a jury instruction for aggravated assault as an inferior offense of felonious assault.

{¶30} Lavean's first assigned error is overruled.

{¶31} We address his fifth and sixth assigned errors together:

{¶32} "5. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶33} "6. The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."

{¶34} In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the prosecution. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is "'a term of art meaning that legal standard which is applied to determine whether the case may go to the [finder of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law.'" *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." (Citation omitted.) *Thompkins* at 386*.*

{¶35} "In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution." *State v. Janson*, 11th Dist. Ashtabula No. 2020-A-0018, 2020-Ohio-4525, ¶ 8, quoting *State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, 96 N.E.3d 1046, ¶ 95. "A

11

conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt." *Janson* at ¶ 8, quoting *Carter* at ¶ 95.

{¶36} In *Thompkins* at 387, the Ohio Supreme Court explained:

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) [*Black's* at 1594].
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * * *See*[ *also*] *State v. Martin* * * *, 20 Ohio App.3d 172, 175, * * *, 485 N.E.2d 717, 720-721 [(1983)] ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

{¶37} "The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. * * *." *State v. Miller,*

12

4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 28. *See also Masters*, 2020-Ohio-864, at ¶ 19.

**{¶38}** When an appellate court concludes that a defendant's conviction is supported by the weight of the evidence, this includes a conclusion that sufficient evidence supports the conviction. (Citation omitted.) *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

**{¶39}** Here, Lavean's brief summarily states that all of his convictions are against the manifest weight of the evidence and supported by insufficient evidence, yet he only raises specific arguments about his felonious assault conviction.

**{¶40}** Because of the limited nature of the argument, we will not formulate arguments regarding Lavean's other convictions for him. App.R. 16(A)(7) (appellant bears burden of presenting argument and law on appeal). It is not the function of appellate courts to search the record and formulate legal arguments on behalf of the parties. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19. Thus, we only address his felonious assault conviction, not the others, under his fifth and sixth assigned errors.

**{¶41}** Lavean was convicted of felonious assault in violation of R.C. 2903.11(A)(2). Thus, the state had to establish that Lavean knowingly caused or attempted to cause physical harm to Cosic by means of a dangerous weapon or ordnance. *Id.* "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶42} Lavean asserts there was no evidence showing he had a weapon during the altercation and that his recorded interview, which included an admission that he had a gun, was unreliable because he had been kicked in the head and was suffering from trauma at the time. He further claims that Cosic's injuries show he, and not Lavean, was the aggressor.

{¶43} Contrary to Lavean's arguments, his felonious assault conviction is not against the manifest weight of the evidence. As stated previously, Cosic testified that Lavean had a gun that night when he exited his car and that Lavean shot at him several times before hitting Cosic in the leg. Cosic testified that he still walks with a limp as a result of his injury. Further, the bar's parking lot surveillance footage shows Lavean with what looks like a gun in his hand at the beginning of the altercation. Furthermore, the video, as well as Cosic's and Levean's testimony, confirm that Lavean was the first to use force. Thus, the state established he knowingly caused physical harm to Cosic by means of a dangerous weapon.

{¶44} Accordingly, there is independent evidence establishing the elements of the offense aside from the recorded interview. Moreover, Lavean's testimony that he did not recall the contents of his interview and that he was suffering from head trauma at the time was before the triers of fact for their consideration.

{¶45} Last, as for Lavean's Crim.R. 29 challenge, this attacks the sufficiency of the evidence. Upon finding that his felonious assault conviction is not against the manifest weight of the evidence, it is also necessarily supported by sufficient evidence. *State v. Struble*, 11th Dist. Lake No. 2018-L-104, 2019-Ohio-4650, 148 N.E.3d 24, ¶ 35.

14

{¶46} Accordingly, Lavean's fifth and sixth assigned errors lack merit and are overruled.

{¶47} The trial court's decision is affirmed.


MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.