[Cite as *State v. Allen*, 2022-Ohio-4243.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

    - v -

THOMAS G. ALLEN,

        Defendant-Appellant.

CASE NO. 2021-L-060

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 000662

**O P I N I O N**

Decided: November 28, 2022
Judgment: Affirmed

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp,* Lake County Public Defender, and *Melissa A. Blake,* Assistant Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Thomas G. Allen, appeals from the judgment of conviction entered by the Lake County Court of Common Pleas, after a jury trial, on one count of aggravated burglary, one count of aggravated menacing, one count of tampering with evidence, and one count of failure to comply with the order of a police officer as well as several repeat violence offender specifications.  We affirm.

{¶2}   In July 2020, William Hale lived in Painesville Township, Ohio with his minor nephew, J.H. (16 years old), a minor niece, S.H. (15 years old), and another, adult niece,

Kaylee Dowen (18 years old). Mr. Hale's girlfriend, Laura Toth, and her minor daughter, D.B. (14 years old), were frequent visitors to the home. On July 15, 2020, Mr. Hale had various people over to his home, including Ms. Toth; her daughter; and appellant, Mr. Hale's cousin. The adults played poker and socialized, while Kaylee and the other kids talked and engaged with their electronics. Eventually the visitors left, and the home's residents went to bed. The following day was apparently uneventful.

{¶3} In the early morning hours of July 17, 2020, however, at approximately 2:30 a.m., appellant arrived at the residence of his cousin. He entered the home without knocking and encountered J. H. and D.B. in the kitchen. At the time, Mr. Hale was upstairs sleeping, and J.H.'s two sisters were also in their bed on the first floor. Appellant asked J.H. if he and Mr. Hale wished to smoke marijuana. J.H. declined but directed appellant to the outdoors where J.H. ostensibly kept marijuana. Appellant left the home for a short period but later returned and again re-entered. Appellant appeared agitated and inquired why J.H. and D.B. were stalking him. He brandished a knife, pointed the same at the two children, then chased J.H. up the stairs. Meanwhile, D.B. entered the downstairs bedroom and Kaylee called 911.

{¶4} Mr. Hale was awoken by the commotion and retrieved a baseball bat. Mr. Hale ultimately chased appellant from the home. Appellant fled the scene on his motorcycle before police arrived. An officer spotted him, but appellant refused to stop. Appellant eventually pulled over and he was arrested. The knife appellant brandished was never located.

{¶5} Appellant was indicted on two counts of burglary, felonies of the second degree, with repeat violent offender specifications; two counts of aggravated burglary,

2

felonies of the first degree, with repeat violent offender specifications; two counts of felonious assault, felonies of the second degree, with repeat violent offender specifications; one count of aggravated menacing, a misdemeanor of the first degree; one count of tampering with evidence, a felony of the third degree; and one count of failure to comply with the order or signal of a police officer, a felony of the fourth degree. The matter proceeded to a jury trial, where appellant was found guilty on both counts of burglary; both counts of aggravated burglary; the aggravated menacing count; the tampering with evidence count; and the failure to comply count. He was acquitted on each count of felonious assault. Without objection, the trial court merged each burglary and one aggravated burglary into the second aggravated burglary count for purposes of sentencing. He was then sentenced to an indefinite prison term of a minimum of 11 years and a maximum 16 and one-half years on the aggravated burglary count; 36 months on the tampering with evidence count; 12 months on the failure to comply count; and 180 days in jail on the aggravated menacing count. The 12-month term for failure to comply was ordered to run consecutively with the sentence for aggravated burglary. All other terms were ordered to be served concurrently, for a total term of 12 years to 17 and one-half years.

{¶6} Appellant appeals and assigns seven errors. His first two assignments of error provide:

{¶7} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal under Crim.R. 29(A).

{¶8} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

3

Case No. 2021-L-060

{¶9} "[A] 'sufficiency' argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense." *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶10} In contrast, a "court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶11} Appellant argues that the state failed to present sufficient, credible evidence to support his convictions for aggravated burglary, aggravated menacing, and tampering with evidence.[1] In particular, appellant contends the state failed to establish (1) he trespassed in the structure, (2) with the purpose to commit any criminal offense and (3) that he inflicted, attempted to inflict, or threatened to inflict physical harm on another. Each of the foregoing are necessary elements for his conviction on aggravated burglary. Regarding the aggravated menacing conviction, appellant does not appear to directly challenge the sufficiency of the state's evidence; rather, he seems to argue that the

---

1. Appellant actually asserts that the *jury* erred in finding him guilty on each count on which it did not enter a verdict of acquittal; because, however, the only entries that are reduced to a judgment of conviction are final, we cannot address the validity of the verdicts on the merged counts. *See, e.g.*, *State v. White*, 156 Ohio St.3d 536, 2019-Ohio-1215, ¶13 ("When valid, a judgment of conviction is a final order under R.C. 2505.02(B)"). That is, the counts which merged for purposes of sentencing are not convictions, not final orders, and thus not within the scope of an appeal from the underlying judgment of conviction.

4

Case No. 2021-L-060

witness testimony that he wielded a knife was not believable due to subtle, differing details in each witness' account. With respect to the tampering conviction, appellant asserts the state failed to establish he ever possessed a knife and thus failed to adduce any evidence that he discarded a knife.

{¶12} Appellant was convicted of aggravated burglary, in violation of R.C. 2911.11(A)(1), which provides, in relevant part: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]" Furthermore, criminal trespass is defined in R.C. 2911.21(A)(1) and states that: [n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]"

{¶13} Appellant first asserts the state failed to provide credible evidence that he trespassed in the residence on the night of the incident. He contends he was a regular visitor in his cousin's home and thus was consensually permitted to enter. While he may have been a visitor previously and admitted into the residence routinely, Mr. Hale testified no one, let alone appellant, was permitted to walk into his home. To the contrary, Mr. Hale stated appellant was never a resident of the home and no one, other than the residents, were permitted to walk into the home. Mr. Hale noted that one of his nieces, S.H., (who lives in the residence) has cerebral palsy and is "pretty friendly." As such, out of safety concerns, no one is permitted in the home without calling or knocking. Mr. Hale claimed that anyone he associates with is aware of this rule. Mr. Hale further emphasized his other niece, Kaylee, and nephew, J.H. (who also lived in the residence), were the only

5

individuals (besides himself) with keys to the home. And J.H. testified that while appellant had visited the residence in the past, he did so infrequently. The foregoing testimony provided sufficient, credible evidence that appellant knowingly entered the premises of Mr. Hale without privilege to do so. We therefore conclude there was credible evidence to establish appellant was a trespasser on the morning of the incident beyond a reasonable doubt.

{¶14} Moreover, testimony established that appellant, after exiting the residence to apparently smoke marijuana, re-entered the kitchen where D.B. and J.H. were talking and threatened them by pointing a knife in their direction. Testimony indicated that appellant's face was red, sweaty, and he appeared angry; moreover, according to D.B., she and J.H. were not concerned with what appellant was doing while he was outside. Upon reentry, however, appellant accused the two kids of "watching" or "stalking" him.

{¶15} With this in mind, appellant was convicted of aggravated menacing, which required proof that appellant knowingly caused another to believe he would cause serious physical harm to his or her person. R.C. 2903.21. By re-entering the home as described above, the jury could reasonably conclude appellant committed aggravated menacing by knowingly causing both D.B. and J.H. to believe he would seriously injure them with the knife. As such, the jury could also reasonably conclude appellant re-entered the home with the purpose to commit aggravated menacing and, at the very least, through his gesture(s) of pointing the knife in the children's direction, threatened to inflict physical harm on both D.B. and J.H. – the remaining elements of aggravated burglary.

{¶16} Appellant, however, contends that his conviction for aggravated burglary is inconsistent with the jury's acquittal for felonious assault. Felonious assault, as charged

6

in the indictment, required the state to prove appellant knowingly caused or attempted to cause physical harm to another by means of a deadly weapon. The conviction for aggravated burglary only required appellant to enter the residence with the purpose to commit a criminal offense. The jury could have reasonably concluded that appellant did not knowingly cause or attempt to cause physical harm with the knife and, at the same time, concluded that he did knowingly cause D.B. and J.H. *to believe* he would seriously injure them. In other words, the jury could consistently conclude appellant was not guilty of felonious assault, but still enter a verdict of guilty on the aggravated menacing charge, which would be sufficient to meet the "with-purpose-to-commit-a-criminal-offense" element of aggravated burglary.

{¶17} Appellant next argues the state failed to adduce sufficient, credible evidence to prove his guilt on the tampering with evidence count. R.C. 2921.12(A)(1) provides, in relevant part: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: * * * Alter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶18} Appellant asserts the state's witnesses were sufficiently inconsistent regarding the appearance of the knife he purportedly wielded that the evidence failed to support the conclusion he ever possessed the weapon. He additionally claims that even if there was sufficient, credible evidence to support the conclusion that he possessed the knife, there was nothing introduced to establish he discarded the object. Again, we do not agree.

7

Case No. 2021-L-060

{¶19} D.B. testified appellant brandished a knife and pointed it at both her and J.H. and, in an irritated state, questioned why they were stalking him. J.H. testified, without contradiction, to the same facts. Moreover, after D.B. fled to the downstairs bedroom, Kaylee testified she observed appellant with a knife chasing J.H. up the stairs. Although each individual had differing descriptions of the knife's characteristics (D.B. testified the blade was black; J.H. testified it had "camo" on it; and Kaylee stated it had a black blade with a yellow handle), these minor discrepancies, in light of chaos and commotion, do not render their testimony not credible. Moreover, Mr. Hale testified that after he left his bed, he observed appellant with a knife; and, as appellant left on his motorcycle, he was still in possession of the weapon. Considering the totality of the evidence, the jury could reasonably conclude appellant possessed a knife while in the residence and on the property during the incident. It could also reasonably conclude appellant had the knife as he left the property and, in light of the fact it was not in his possession when he was arrested, that he disposed or "removed" the weapon from his person with the purpose to impair its evidentiary value.

{¶20} Given the foregoing, we conclude the state produced sufficient, credible evidence to sustain appellant's convictions for aggravated burglary, aggravated menacing, and tampering with evidence.

{¶21} Appellant's first and second assignments of error lack merit.

{¶22} Appellant's third through seventh assignments of error provide:

{¶23} "[3.] The defendant-appellant's constitutional challenges to the indeterminate prison sentence of eleven to sixteen and one-half years on count five, that was ordered pursuant to the 'Reagan Tokes Act,' AKA Senate Bill 201, are ripe for review.

8

{¶24} "[4.] The defendant-appellant's indeterminate prison sentence of eleven to sixteen and one-half years on count five that was ordered pursuant to the 'Reagan Tokes Act,' AKA Senate Bill 201, must be reversed as the Reagan Tokes Act is unconstitutionally void for vagueness.

{¶25} "[5.] The defendant-appellant's indeterminate prison sentence of eleven to sixteen and one-half years on count five that was ordered pursuant to the 'Reagan Tokes Act,' AKA Senate Bill 201, must be reversed as the Reagan Tokes Act unconstitutionally violates the doctrine of separation of powers.

{¶26} "[6.] The defendant-appellant's indeterminate prison sentence of eleven to sixteen and one-half years on count five that was ordered pursuant to the 'Reagan Tokes Act,' AKA Senate Bill 201, violates his constitutional right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Ohio Constitution.

{¶27} [7.] The defendant-appellant's indeterminate prison sentence of eleven to sixteen and one-half years on count five that was ordered pursuant to the 'Reagan Tokes Act,' AKA Senate Bill 201, violates his constitutional rights to fair trial and due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5 & 10 of the Ohio Constitution."

{¶28} Although this court previously concluded the foregoing constitutional challenges to the presumptive release provisions in the Reagan Tokes Act were not ripe for review, *See, e.g., State v. Lavean*, 11th Dist. Lake No. 2020-L-045, 2021-Ohio-1456, the Supreme Court of Ohio, in *State v. Maddox* ___ Ohio St.3d ___, 2022-Ohio-764, determined the arguments are ripe. *Id.* at ¶11.

9

Case No. 2021-L-060

{¶29} With this in mind, this court, in *State v. Reffitt*, 11th Dist. Lake No. 2021-L-129, 2022-Ohio-3371, recently concluded the Regan Tokes Act (1) is not unconstitutionally void for vagueness, *Id.* at ¶29-42; (2) does not unconstitutionally violate the doctrine of separation of powers, *Id.* at ¶44-50; (3) does not violate a defendant's right to a trial by jury, *Id.* at ¶52-58; and (4) does not violate a defendant's right to a fair trial and due process. *Id.* at ¶60-72.

{¶30} Accordingly, while appellant's third assignment of error has merit, it is merely a gatekeeper for analyzing the remaining constitutional arguments. Appellant's constitutional arguments, however, lack merit. Assignments of error four through seven are accordingly overruled.

{¶31} The judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-L-060